**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0629-22

S.P.,[1]

    Plaintiff-Appellant,

v.

A.R.B.,

    Defendant-Respondent.

_____

> Submitted September 11, 2024 – Decided September 23, 2024
>
> Before Judges Mayer and Rose.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FD-20-0900-22.
>
> Seidia Roach Bernard (Roach Bernard, PLLC), attorney for appellant.
>
> Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials and pseudonyms to protect the child's privacy interests. See R. 1:38-3(d)(11).

In this international custody dispute, plaintiff S.P., a Jamaican national and resident, appeals from a September 7, 2022 Family Part order relocating the parties' biological daughter, S.A.B. (Sara), to the United States where the child now lives with her father, defendant A.R.B., a Jamaican national and United States resident. For the first time on appeal, plaintiff argues the trial court lacked subject matter jurisdiction to consider the parties' applications for custody of Sara. Plaintiff does not expressly challenge the court's factual and credibility findings.

Based on our review of the limited record provided on appeal,[2] although the trial court incorrectly concluded New Jersey was Sara's "home state" under the New Jersey Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA or Act), N.J.S.A. 2A:34-53 to -95, when plaintiff filed her application, we conclude the court properly exercised temporary emergency

---

[2] Although defendant received an extension of time to file his responding brief, he failed to do so and, as such, his brief was suppressed. In her merits brief, plaintiff acknowledged she failed to provide all transcripts of proceedings before the Family Part, see R. 2:5-4(a), but asserted the transcription service was unable to transcribe all proceedings "for reasons unknown." Our review of the appellate docket, however, indicates the two missing transcripts were rejected for plaintiff's failure to provide a deposit. Those transcripts pertain to the February 18, 2022 hearing on plaintiff's order to show cause application, and the testimony of plaintiff's three witnesses apparently held on August 1, 2022. These deficiencies do not hamper our review.

2

jurisdiction under the Act based on defendant's proffer concerning Sara's allegations of abuse and neglect and correctly held a plenary hearing regarding those allegations. Because no court in Jamaica previously issued a custodial order, we further conclude the September 7, 2022 order became a final determination under the UCCJEA when New Jersey became Sara's home state. Accordingly, we affirm.

I.

The facts and procedural history are set forth at length in the trial court's thirty-nine-page statement of reasons that accompanied the September 7, 2022 order. We therefore only summarize the pertinent events.

The parties never married or cohabitated. At the time of her removal, Sara, born September 2013, was in third grade and lived in a three-bedroom, one-bathroom home in Jamaica with plaintiff, her fiancé, F.O. (Frank), the couple's three younger biological children, Sara's half-siblings, and other relatives.

Defendant and his wife, D.S.B. (Dana), immigrated from Jamaica to the United States in December 2020. Defendant maintained a relationship with Sara throughout her life; the parties offered conflicting testimony regarding the extent

of his involvement. It is undisputed that no court had previously entered an order adjudicating Sara's custody.

Around November 2021, defendant and Dana traveled to Jamaica. During their visit, plaintiff suggested Sara, who was attending school remotely at that time, return to the United States with defendant and Dana from November 9 to December 1, 2021. On November 15, however, defendant advised plaintiff he would not return Sara as agreed because the child claimed Frank physically abused her. Defendant told plaintiff he intended to file for United States residency on Sara's behalf.

Sometime around December 30, 2021, plaintiff filed an application with the Jamaica Central Authority pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, and its implementing statute, International Child Abduction Remedies Act (ICARA), 42 U.S.C. 11601-11611.[3] The status of her application is not contained in the record.

In February 2021, plaintiff filed an emergent order to show cause application in the Superior Court of New Jersey, Family Part, Union County,

---

[3] Dated December 30, 2021, the application was included in plaintiff's appendix. Because the application was not provided to the trial court, it is inappropriate for our review. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:5-4(a) (2025).

seeking Sara's return. Plaintiff did not apprise the court of her Hague Convention application.

Both parties appeared remotely on the return date of plaintiff's application.[4] Neither party was represented by counsel. Plaintiff asserted defendant failed to return Sara pursuant to their agreement. Defendant argued Sara disclosed she was physically abused by Frank, the conditions of her Jamaican home were inadequate, and she did not wish to return to Jamaica. In reply, plaintiff asserted "she ha[d] evidence" she was physically abused by defendant when the parties resided in Jamaica.

Following the hearing, the court issued an order, exercising temporary emergent jurisdiction presumably under the UCCJEA and scheduled a plenary hearing.[5] The court granted the parties joint legal custody, awarding defendant temporary residential custody, and established a parenting time schedule, which included video calls between plaintiff and Sara.

---

[4] As noted, plaintiff did not provide the transcript of this February 18, 2022 hearing. We glean the parties' allegations from the trial court's statement of reasons that accompanied the September 7, 2022 order.

[5] The memorializing February 23, 2022 order does not cite the UCCJEA. However, the copy of the order included in plaintiff's appendix does not include the second page.

The court thereafter conducted a multi-day plenary hearing over the course of several months. Both parties were self-represented, presented lay witness testimony on their behalf, including Dana and Frank, and moved various documents into evidence.

Based on the testimony adduced during the hearing, and weighing the credibility of the witnesses, the court concluded Sara's interests were best served by granting the parties joint legal custody and designating defendant as the parent of primary residency. Balancing the non-exhaustive factors set forth in N.J.S.A. 9:2-4, the court found both parties were capable and willing to cooperate and communicate concerning matters relating to Sara, and both parties were willing to accept custody.

However, the court was not persuaded plaintiff established her claim of prior domestic violence or defendant sustained his burden of proving Frank physically abused Sara. Noting Frank "saw his role as that of a caretaker entrusted with the child's welfare," the court found credible Frank's testimony denying he abused Sara. The court thus "d[id] not have any concerns regarding the child while in the custody of either parent." Nor did the court find either party unfit to parent Sara. Nonetheless, the court "f[ound] compelling[] the

6

evidence establishing that there was significant marital discord" in plaintiff's home.

The court concluded defendant was capable of offering Sara "a more stable home environment." In reaching its conclusion, the court compared defendant's committed relationship with plaintiff's need to move several times in view of the "family discord" according to Frank's testimony that he no longer resided with plaintiff's relatives due to "a perceived threat from the child's uncle." The court further found defendant substantiated his allegations of overcrowding in plaintiff's home. The court thus "ha[d] concerns about the stability of the home in Jamaica." Moreover, Sara was attending the local public school in Union County and, by all accounts, was "thriving."

The court issued a memorializing order granting defendant's petition[6] to relocate Sara to the United States and, as such, implicitly denying plaintiff's application to return the child to Jamaica; awarding the parties joint legal custody; designating defendant the parent of primary residency; and establishing a parenting time schedule.

---

[6] Plaintiff's appellate appendix does not include defendant's petition. However, it is unclear from the record whether defendant formally filed a petition for relief or whether the court considered defendant's oral proffer as a cross-application.

A-0629-22

## II.

Our review of a Family Part judge's determination in custody and parenting time matters is limited. "[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We review de novo the Family Part's interpretation of the law, including jurisdictional questions concerning international child custody disputes. See Sajjad v. Cheema, 428 N.J. Super. 160, 170 (App. Div. 2012).

Subject matter jurisdiction involves "a threshold determination as to whether [a court] is legally authorized to decide the question presented." Robertelli v. N.J. Off. of Att'y Ethics, 224 N.J. 470, 481 (2016) (alteration in original) (quoting Gilbert v. Gladden, 87 N.J. 275, 280-81 (1981)). "When a court lacks subject matter jurisdiction, its authority to consider the case is 'wholly and immediately foreclosed.'" Ibid. (quoting Baker v. Carr, 369 U.S. 186, 198 (1962)). Accordingly, challenges to the court's subject matter jurisdiction may be raised at any time, even on appeal. See Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000).

In Sajjad, we described a Family Part judge's obligation under the UCCJEA when confronted with an international custody dispute. In discussing the Act, we stated: "The UCCJEA governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes." Sajjad, 428 N.J. Super. at 170; see also N.J.S.A. 2A:34-57(a) (providing the term, "state," as used in the Act includes foreign nations). "The UCCJEA was enacted in an effort 'to avoid jurisdictional competition and conflict' between jurisdictions in favor of 'cooperation with courts of other states [or other countries] as necessary to ensure that custody determinations are made in the state [or country] that can best decide the case.'" Sajjad, 428 N.J. Super. at 170-71 (first alteration in original) (quoting Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007)). When addressing "a child custody complaint involving competing interstate or international jurisdictional claims, the Family Part must examine and follow the multi-step procedure outlined in the UCCJEA." Id. at 171.

"The UCCJEA prioritizes the use of the child's 'home state,' as the exclusive basis for jurisdiction of a custody determination, regardless of the residency of the parents." Id. at 171. The Act defines "home state," in pertinent part, as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody

9

proceeding." N.J.S.A. 2A:34-54. As we stated in <u>Sajjad</u>, "the statutory language 'lived,' included within the definition of home state, connotes physical presence within the state, rather than subjective intent to remain." 428 N.J. Super. at 172-73.

"If New Jersey is the child's home state, the next inquiry is whether custody proceedings had been commenced in another state [or country], properly exercising jurisdiction, which issued an initial custody determination." <u>Id.</u> at 174. If not, the court may exercise jurisdiction. <u>See</u> <u>ibid.</u>

In the present matter, the trial court incorrectly concluded New Jersey was Sara's home state. Sara began living with defendant in this state on November 9, 2021 and plaintiff filed her application less than six months later, on February 17, 2022. Accordingly, the court did not have subject matter jurisdiction to decide the parties' initial custody dispute under N.J.S.A. 2A:34-65, even though no Jamaican court had issued a custody order. Specifically, N.J.S.A. 2A:34-65 provides, in pertinent part, "a court of this State has jurisdiction to make an initial custody determination only if: (1) this State is the home state of the child within six months before commencement of the proceeding"; and (2) the child's home state lacks or has declined jurisdiction. Because Sara did not live in New Jersey for at least six months before plaintiff commenced the present action and

A-0629-22

there is no evidence in the record Jamaica lacked or declined jurisdiction, New Jersey was not Sara's home state.

However, the court properly exercised temporary emergency jurisdiction under N.J.S.A. 2A:34-68. See also N.J.S.A. 2A:34-65(d) (empowering a court to "assume temporary emergency jurisdiction in accordance with [N.J.S.A. 2A:34-68]"). N.J.S.A. 2A:34-68(a) confers temporary emergency jurisdiction upon a New Jersey court where, in relevant part, "it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." Thus, unlike the home state requirement set forth in N.J.S.A. 2A:34-65(a)(1), a child's mere presence in New Jersey satisfies N.J.S.A. 2A:34-68(a) if the child requires emergency protection.

Nonetheless, an order issued under the court's temporary emergency jurisdiction may become a final determination:

> If there is no previous child custody determination that is entitled to be enforced under this act, and if no child custody proceeding has been commenced in a court of a state having jurisdiction under [N.J.S.A. 2A:34-65 to -67], a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [N.J.S.A. 2A:34-65 ("[i]nitial child custody jurisdiction"), N.J.S.A. 2A:34-66 ("[e]xclusive, continuing jurisdiction"), or N.J.S.A. 2A:34-67 ("[j]urisdiction to modify determination")]. If a child custody proceeding has not been or is not commenced in a court of a state

11

having jurisdiction under [N.J.S.A. 2A:34-65 to -67], a child custody determination made under this section becomes a final determination if:

(1) it so provides; and

(2) this State becomes the home state of the child.

[N.J.S.A. 2A:34-68(b).]

Here, the court properly exercised temporary emergency jurisdiction under N.J.S.A. 2A:34-68(a) to test defendant's allegations that Sara was physically abused by Frank while the child was in plaintiff's custody. That determination necessarily involved a plenary hearing, which the Family Part judge conducted. See Mackowski v. Mackowski, 317 N.J. Super. 8, 11 (App. Div. 1998) (holding resolution of questions involving credibility cannot be resolved upon competing affidavits).

Moreover, because New Jersey became Sara's home state and the record is devoid of any evidence that a Jamaican court ever issued a custody determination, the September 7, 2022 court order was deemed a final determination under N.J.S.A. 2A:34-68(b). We therefore discern no basis to disturb the order under review.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0629-22